UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

Kenneth G. Moxey,

                     Debtor.

Case No.: 12-74340-AST
Chapter 7

-------------------------------------------------------X
Kenneth Moxey,

                     Plaintiff,

    -against-

Robert L. Pryor, *et al.*

                     Defendants.

Adv. Pro. No.: 13-8108-AST
(consolidated)

-------------------------------------------------------X

## **DECISION AND ORDER GRANTING DAVID A. BETRON'S MOTION TO DISMISS**

The consolidated litigation presently before this Court is a very broad ranging, confusing and poorly framed lawsuit by a purportedly *pro se*[1] debtor, Kenneth G. Moxey ("Debtor" or "Moxey"), regarding his loss of real property located at 245 South First Street, Brooklyn, New York, 11211 (the "Property"). Debtor has filed a number of pleadings with this Court which include scandalous and spurious allegations, for which no good faith basis appears to exist, and which include repetitive and overlapping claims for relief which are simply not available at law or in equity.[2] In fact, in order to work in a careful and deliberate manner through the torrent of pleadings Debtor has filed, and to tamp downs the costs to the parties of duplicative and/or

---

[1] This Court uses the phrase "purportedly" because the pleadings filed by Debtor exhibit at least an ability to craft legal arguments and cite statutes and legal authority, even though the relief requested in the pleadings thus far ruled on by the Court exhibit a lack of factually or legally viable claims. In addition, at hearings thus far conducted, Debtor has been unable to answer questions posed by the Court based on the very papers he has been signing and filing.

[2] Debtor has peppered the Defendants with numerous pleadings. These pleadings allege, *inter alia*, violations of the Fair Debt Collection Practices Act, fraud, conspiracy, civil rights violations, civil RICO claims, and various criminal violations. Debtor has also alleged the involvement of Hon. Judge Joanna Seybert, U.S.D.J., in a criminal conspiracy, and stated an intention to sue or seek criminal charges against the undersigned if any of the relief Debtor seeks is denied.

overlapping filings, on March 10, 2014, the Court entered an Order prohibiting Debtor from filing new pleadings for ninety (90) days (the "Stay Order").  [dkt item 82]

At its core, this lawsuit is little more than Debtor's effort to collaterally attack final judgments of this Court and of a New York state court; but through its sprawling growth, this suit has mushroomed into a waste of the Court's and the parties' limited resources.  A number of disputes created by Debtor's pleadings are now on submission with this Court, including potentially dispositive motions to dismiss.  This Order, however, is specifically directed to Debtor's claims against a process server defendant, David A. Betron ("Betron"), and Betron's motion to dismiss those claims.  Debtor's claims against Betron now reside in three pleadings; (1) Debtor's complaint that was originally filed in Kings County, New York prior to removal of that action to this Court; (2) Debtor's motion seeking leave to file an amended complaint and his proposed first amended complaint as against Betron and various other parties and proposed additional defendants; and (3) Debtor's motion seeking leave to file a further amended complaint and his proposed second amended complaint as against Betron and various other parties and proposed additional defendants  (collectively, these are all referred to as the "Complaint").[3] Various pleadings of Betron seeking dismissal and of Debtor opposing dismissal are now pending.[4]

---

[3] Specifically, Debtor's original complaint filed in Kings County prior to removal is in adv. 13-8132 at dkt item 1; his motion seeking leave to file an amended complaint, along with a proposed amended complaint (the "First Amended Complaint") are in adv. 13-8108 at dkt items 32, 33; and Debtor's second motion for leave to file an amended complaint and a proposed second amended complaint (the "Second Amended Complaint") are in adv. 13-8108 at dkt items 60, 62.

[4] *See* Betron's motion to dismiss filed on September 11, 2013 [adv. 13-8132, dkt item 7]; Debtor's objection to, *inter alia*, Betron's motion to dismiss filed September 27, 2013 [adv. 13-8132, dkt item 15]; Betron's response to Debtor's objection filed on October 19, 2013 [adv. 13-8132, dkt item 32]; Betron's letter seeking clarification filed on December 17, 2013 [adv. 13-8108, dkt item 40]; Debtor's objection to, *inter alia*, various motions to dismiss including that filed by Betron filed on February 6, 2014 [adv. 13-8108, dkt item 56]; Betron's reply declaration in further support of defendant's motion to dismiss in lieu of answer filed on February 18, 2014 [adv. 13-8108, dkt item 70]  (the foregoing pleadings filed by Betron are collectively referred to as the "Betron Motion to Dismiss",

For the reasons to follow, this Court grants Betron's Motion to Dismiss and dismisses all of Debtor's claims against Betron as contained in all of Debtor's Complaints.

*Background*

*Pre-bankruptcy Events*

Based on the pleadings presently before this Court, the basic pre-bankruptcy chronology is as follows. Debtor purchased the Property sometime prior to May 25, 2007.[5] On May 25, 2007, Tuthill Finance LP[6] ("Tuthill") loaned Debtor $480,000.00. Debtor signed a note for the $480,000.00 and gave Tuthill a mortgage on the Property to secure payment of the note.

In 2009, after Debtor defaulted under the terms of the note and mortgage, Tuthill commenced a foreclosure action against Debtor in the Supreme Court of Kings County, New York (the "State Court"), under index number 932/2009 (the "Foreclosure Action"). Debtor failed to answer Tuthill's summons and complaint. On or about April 1, 2010, Tuthill assigned the note, the mortgage, and the foreclosure action to MPJM Crush Holdings, LLC ("Crush"). Crush then moved to substitute itself as the plaintiff in the Foreclosure Action. Crush presented proof of the assignment before the State Court as required under New York law. Accordingly, the State Court granted Crush's motion for substitution. After validly being substituted as the plaintiff, Crush then continued the Foreclosure Action against Debtor and moved for a final judgment of foreclosure.

---

and the pleadings of Moxey are referred as the "Moxey Opposition").

On January 15, 2014, Debtor filed a motion for sanctions against Betron and Tuthill Finance LP [adv. 13-8108, dkt item 47]; a hearing thereon was scheduled for February 25, 2014; Betron and Tuthill Finance LP filed opposition [adv. 13-8108, dkt items 64, 71]. However, Debtor withdrew this sanctions motion at the February 25 hearing, and the calendar was so ordered.

[5] While Debtor may or may not have ever resided at the Property, he did not reside there as of the time he filed bankruptcy in July 2012.

[6] Tuthill Finance LP is also referred to in various pleadings by Debtor as serving as the "Pretender Lender".

The State Court entered a default judgment in favor of Crush. Debtor then moved to vacate this default, claiming that he was never served with the summons and complaint. The State Court scheduled a traverse hearing on the issue of service and heard testimony from Debtor and from the process server, Betron. After the hearing, the State Court issued a decision finding that service of process on Debtor was proper under New York law and denied Debtor's motion to vacate his default. Debtor did not appeal from the decision denying his motion to vacate his default or move for reconsideration.

In June 2012, the State Court granted Crush a final judgment of foreclosure and sale, and determined that Debtor owed Crush $757,811.78, plus interest of $320.82 a day from October 31, 2010, plus fees and costs (the "Foreclosure Judgment"). Debtor did not appeal from the Foreclosure Judgment or move for reconsideration. After the State Court entered the Foreclosure Judgment, the foreclosure referee scheduled a sale of the Property. Debtor then filed for chapter 7 in order to stay the foreclosure sale.

*The Bankruptcy Proceedings*

On July 12, 2012 (the "Petition Date"), Debtor filed his voluntary petition under Chapter 7 of the Bankruptcy Code (the "Petition"). [main case no. 12-74340, dkt item 1] In his Petition, Debtor scheduled a fee simple interest in the Property, but did not schedule it as his residence.[7] Debtor valued the Property at $600,000. [main case no. 12-74340, dkt item 1, Sch. "A"] Debtor's Petition indicates that the Property was encumbered by two liens totaling $757,000.00: a first mortgage held by Crush for $378,500.00; and a second mortgage held by Tuthill for $378,500.00. [main case no. 12-74340, dkt item 1, Sch. "D"] While the amounts Debtor scheduled are substantially less than the amounts set out in the Foreclosure Judgment, and while

---

[7] Debtor scheduled a property in Valley Stream, New York as his residence. [main case no. 12-74340, dkt item 1]

4

he listed two mortgage holders rather than one, Debtor's schedules demonstrate that there was no equity in the Property for the benefit of his bankruptcy estate.

Robert L. Pryor was appointed as the Chapter 7 Trustee of Debtor's bankruptcy case (the "Trustee").

On November 16, 2012, the Trustee filed a motion seeking this Court's approval of a stipulation authorizing the Trustee and Crush to enter into a sale agreement for the Property whereby Crush agreed to make an initial stalking horse offer of $600,000.00, subject to higher or better offers that might be received by the Trustee for the purchase of the Property (the "Settlement Motion"). [main case no. 12-74340, dkt item 19] This agreement provided that, *inter alia*, if Crush was the successful purchaser, it would pay $18,000.00 to the Trustee for the benefit of unsecured creditors of this bankruptcy estate.

Debtor was properly served with the Settlement Motion and did not file an objection.

On December 11, 2012, this Court entered a Stipulation and Order granting the Settlement Motion (the "Approval Order"). [main case no. 12-74340, dkt item 22] Debtor did not appeal the Approval Order.

The Trustee alleges that, on January 9, 2013, Crush executed an Assignment of Bid (the "Assignment of Bid"), whereby it assigned all of its rights, title, and interest in and to the Approval Order to Maaas Enterprises, LP and V-Jama Holdings, LLC (collectively, "Maaas and Jama").[8] Thereafter, the Trustee closed the sale to Maaas and Jama, received all of the funds to be paid under the Approval Order, and executed a deed conveying the Property to Maaas and Jama.

---

[8] *See* The Trustee's Amended Motion to Dismiss or, in the Alternative, for Summary Judgment, filed August 14, 2013 [adv. 13-8108, dkt item 11].

*Debtor's Lawsuits*

On May 7 and May 8 of 2013, Debtor filed a summons and complaint, respectively, against, the Trustee, Crush, Tuthill, Maaas, Jama, Betron and Alan Drezin,[9] before the State Court, commencing an action bearing Index No. 8698/13 (the "Kings County Action") (the Trustee, Crush, Tuthill, Maaas, Jama and Betron are hereafter referred to as "Defendants"). [adv. 13-8108, dkt item 8, Exhibit "J"]

On July 10, 2013, Debtor filed a complaint (the "Trustee Action Complaint") with this Court commencing adversary proceeding 13-8108, entitled *Kenneth Moxey v. Robert L. Pryor* (the "Trustee Action"). The Trustee Action Complaint seeks "an order for the bankruptcy trustee to comply with the court's stipulation and order, and further seeking authorization from the court to sue the trustee, Robert L. Pryor." [adv. 13-8108, dkt item 1] Although the Trustee Action Complaint is at times rambling and difficult to dissect, it essentially seeks this Court's authority for Debtor to sue the Trustee for actions taken in his capacity as a trustee,[10] to hold the Trustee liable for his alleged sale of the Property for $44,000 to Maaas and Jama, and to rescind the deed executed by the Trustee.

On July 12, 2013, the Trustee removed the Kings County Action to the United States District Court for the Eastern District of New York, by filing a Notice of Removal, thereby commencing civil case number 13cv4040, entitled *Kenneth G. Moxey v. Maaas Enterprises, LP,*

---

[9] Debtor's May 8 complaint identified Alan Drezin ("Drezin") as the court-appointed receiver of rents for the Property. The Court has no evidence before it that Alan Drezin has ever been served with process.

[10] Debtor failed to seek authorization from this Court to sue the Trustee prior to commencing the Kings County Action; this is a violation of the holding in *Barton v. Barbour*, 104 U.S. 126, 26 L. Ed. 672 (1881), and its progeny, which have historically come to be known as the *Barton* doctrine - "a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the truistee's official capacity". *In re Am. Land Acquisition Corp.*, 2013 Bankr. LEXIS 2353, at *9, n.5 (Bankr. E.D.N.Y. June 10, 2013). Debtor commenced adversary proceeding 13-8108, seeking permission to sue the Trustee, after he had commenced the Kings County Action but before the Trustee removed that action. As noted within, these two actions have now been consolidated.

*et al.*, (the "Removed Action"). [adv. 13-8132, dkt item 1, Exhibit "L"] Included in the papers filed in the Removed Action is a copy of the complaint filed by Debtor in the Kings County Action, which is also rambling and difficult to dissect, but which also alleges causes of action that appear to stem from the Trustee's sale of the Property. In the Notice of Removal, the Trustee alleged that the Removed Action and the Trustee Action appeared to involve similar underlying facts and circumstances.

On August 6, 2013, Hon. Joanna Seybert, United States District Court Judge for the Eastern District of New York, signed an order referring the Removed Action to this Court, whereupon it was assigned adversary case number 13-8132.

On August 22, 2013, Debtor filed a Motion for Remand of the Removed Action, which is currently under submission with this Court (the "Motion for Remand"). [adv. 13-8132, dkt item 3]

Upon review of the pleadings then before this Court, it appeared that the Trustee Action and the Removed Action involved common questions of law and fact and that consolidation may be appropriate. *See* FED. R. BANK. P. 1001, 7042. Therefore, the Court entered an Order which, *inter alia*, directed the parties to appear before the undersigned on October 22, 2013 and show cause why these two adversary proceedings should not be consolidated (the "October 22 Hearing").

Following the October 22 Hearing, the Court found cause to consolidate and, accordingly, entered an Order on October 29, 2013 which, *inter alia*, consolidated the Trustee Action and the Removed Action under adversary proceeding number 13-8108 (the "Consolidation Order"). [adv. 13-8108, dkt item 30]

The Consolidation Order further directed that on or before November 18, 2013, Debtor shall file and serve an amended complaint on all defendants, and that defendants shall file a responsive pleading on or before December 16, 2013. However, in lieu of filing an amended complaint against the exact same defendants, Debtor filed his proposed First Amended Complaint seeking to (1) assert additional claims and/or restate claims against the original defendants in the Removed Action and the Trustee Action[11] and (2) to add additional defendants.[12]

On January 22, 2014, this Court issued an Order (the "Enlargement Order") in which the Court denied Debtor's request to add additional defendants at that juncture. The Enlargement Order stated, *inter alia*, that the Court, would consider Debtor's request to add additional defendants after ruling on the multiple pending motions to dismiss Debtor's claims, and granted Debtor's request to enlarge the time for him to respond to various the Motions to Dismiss. [adv. 13-8108, dkt item 49]

Based upon the avalanche of pleadings filed by Debtor, on March 10, 2014, this Court entered the Stay Order, prohibiting Debtor from filing any further pleadings with this Court for ninety (90) days, with limited exceptions, while this Court addressed the numerous pleadings already pending. [adv. 13-8108, dkt item 82]

For purposes of the Betron Motion to Dismiss, this Court treats the claims alleged by Debtor against Betron to be those set out in the Complaint, the First Amended Complaint, and the Second Amended Complaint.

---

[11] While the original complaint in adversary 13-8132 also names Alan Drezin as a defendant, there is no evidence before the Court that he was served, and he has not made an appearance.

[12] The proposed additional defendants are Alan Drezin, Jeffrey Wain, Pliny Syndications, LLC and Mario Prestigiacomo, each of whom allegedly were involved in the Trustee's sale of the Property.

8

*Discussion*

*Dismissal of Debtor's Claims Against Betron*

As to the Defendants as a group, Debtor alleges, *inter alia*, violations of the Fair Debt Collection Practices Act, fraud, conspiracy, civil rights violations, a civil RICO claim, and various criminal violations. As to Betron specifically, Debtor alleges violations of substantive and procedural due process, violations of his fifth amendment Constitutional rights, violation of rights under Title 42, §§ 1983- 1986, as well as criminal acts under various enumerated federal statutes including under Title 18 §§ 242 and 371, and Title 28, §§ 1510, 1951, 1952, 1341, 1343, as well as fraud and conspiracy.

Betron bases his request for dismissal of this adversary proceeding on Rule 12(b)(6),[13] as incorporated by Bankruptcy Rule 7012. This Court has previously addressed the application of Rule 12(b) and the flexible plausible pleading standard established by the Supreme Court in several published decisions. *See In re Ippolito*, 2013 WL 828316, at *3-4 (Bankr. E.D.N.Y. Mar. 6, 2013), discussing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (pleading standard for a § 1983 claim) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (pleading standard for anti-trust conspiracy claim); *see also In re Int'l Tobacco Partners, Ltd.,* 462 B.R. 378, 385 (Bankr. E.D.N.Y. 2011); *In re Jones*, 2011 WL 1549060, at *2-3 (Bankr. E.D.N.Y. Apr. 21, 2011); *In re Coletta*, 391 B.R. 691, 693-94 (Bankr. E.D.N.Y. 2008).

Under the U.S. Supreme Court's *Iqbal/Twombly* analysis, to survive a motion to dismiss, a complaint must contain sufficient factual matter, which, when accepted as true, is adequate to "state a claim to relief that is plausible on its face". *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

[13] Betron also sought dismissal based on Rule 12(b)(5) for insufficiency of service of process; this ground is moot based on this Court's granting of dismissal on Rule 12(b)(6) grounds.

to draw the reasonable inference that the defendant is liable for the relief sought. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted" so as to create liability. *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal citations omitted).

Neither *Iqbal* nor *Twombly* departed from the standard that, in considering a Rule 12(b)(6) motion, a court is to accept as true all factual allegations in the Complaint and draw all inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). However, as the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, a court need not "accept as true a legal conclusion couched as a factual allegation," and "[d]etermining whether a complaint states a plausible claim for relief will [. . .] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79. (citing FED. R. CIV. P. 8(a)(2)).

When a complaint alleges fraud or mistake, it must also satisfy the heightened pleading requirements of Rule 9(b), made applicable here by FED. R. BANKR. P. 7009. *See* FED R. CIV. P. 9(b); *see American Express Travel Related Servs. Co. v. Heinen (In re Henein)*, 257 B.R. 702, 706 (E.D.N.Y. 2001). Rule 9(b) requires that an allegation of fraud be pled with "particularity," including specific facts regarding "the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *Id.* (citing *Acito v. IMCERA Group*, 47 F.3d 47, 51-52 (2d Cir. 1995)). With respect to fraudulent intent, "state of mind can

be 'averred generally,'" but the movant "must allege facts that give rise to a strong inference of fraudulent intent." *Id.* (internal citations omitted).

In deciding the Betron Motion to Dismiss, this Court must limit its review to facts and allegations contained in the Complaint, documents incorporated into the Complaint by reference or attached as exhibits, and matters of which this Court may take judicial notice. *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also, Int'l Tobacco Partners, Ltd.,* 462 B.R. at 385 ("courts may consider documents that are integral to the complaint in deciding a motion to dismiss").

### 1. Debtor has failed to properly state a viable claim for improper service of process

Debtor's allegations against Betron all revolve around Debtor's claims that he was not properly served with process in the Foreclosure Action; however, this matter has been conclusively determined by the State Court, and Debtor's claims are therefore an impermissible collateral attack on the State Court's ruling following the traverse hearing. *See Harris v. Rivera,* 454 U.S. 339, 348 n.21 (1981) ("[t]he strong interest in preserving the finality of judgments… as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified" ) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 153, n.13 (1977)); *Kelleran v. Adrijevic*, 825 F.2d 692, 695 (2d Cir. 1987) ("Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction.").

The claims for improper service are also barred by the *Rooker–Feldman* doctrine, which bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). "Underlying the *Rooker–Feldman* doctrine is the principle, expressed by Congress

11

in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). *Rooker–Feldman* applies to cases satisfying a four part test: (1) the federal-court plaintiff lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment"; (3) the plaintiff "must invite [federal] court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the [federal] court proceedings commenced". *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock*, 422 F.3d at 85). *Rooker-Feldman* clearly applies to the instant case as Debtor lost in state court; Debtor is complaining of injuries allegedly caused by the foreclosure judgment which allegedly resulted from the adverse outcome of the traverse hearing; Debtor is requesting that this Court review and set aside the results of the traverse hearing; and the results of the traverse hearing occurred before Debtor's bankruptcy case commenced. This Court, therefore, lacks subject matter jurisdiction to consider any challenge to the results of the traverse hearing. *See In re 231 Fourth Avenue Lyceum, LLC*, 506 B.R. 196, 206-208 (Bankr. E.D.N.Y. Feb. 28, 2014). .

### 2. Debtor has failed to properly state a viable claim for violation of his civil rights

As for Debtor's alleged civil rights violations, as Betron correctly points out, Betron is a private party who effectuated service at the request of a private party. As such, there was no state action or state actor whose acts or omissions could be the basis for a civil rights violation claim. The Supreme Court has stated that a § 1983 claim under Title 42 has two elements: the plaintiff must allege (1) a deprivation of a federal right, and (2) that the person who deprived him of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *accord West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). Some

courts and noted academic scholars have considered that there are at least four major elements of a § 1983 claim:

      a.      Defendant is a "suable person";
      b.      who acted under "color of state law";
      c.      proximately causing;
      d.      a deprivation of federally protected rights.

*See Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) (abrogated on other grounds by *Pleasant Grove City v. Summum*, 555 U.S. 460, 466 (2009); *Hartman v. Moore*, 547 U.S. 250, 257 n.5 (2006) (plaintiff must plead and prove causation); *see also Hayden v. Nevada County*, 664 F.3d 770, 773 (8th Cir. 2012) (causation is essential element of §1983 claim); *See generally Schwartz, Section 1983 Litigation: Claims and Defenses*, Ch. 1 (4th ed. 2012).

Finally, § 1983 does not itself create or establish any federally protected rights; rather, § 1983 authorizes the assertion of a claim for relief to enforce federal rights created by either the federal Constitution or, in some cases, by a federal statute other than § 1983. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-394 (1989); *Chapman v. Houston W.R.O.*, 441 U.S. 600, 619 (1979); *Baker v. McCollan*, 443 U.S. 137, 144 (1979).

Here, Debtor makes vague allegations about "sewer service" and about Betron perjuring himself during the traverse hearing. Debtor seeks "[r]eferral of the process server to the United States trustee for an investigation, arrest and prosecution for perjury, fraud upon the court and fraud upon plaintiff for offering a false instrument for filing in violation of the New York Penal Law 170.10." Second Amended Complaint, para 35.   Debtor asserts as a cause of action, count fifteen, a civil rights violation, as follows:

> 274. David A. Betran, Tuthill Finance, Pliny Syndications and MPJM Crush Holdings directly and indirectly violated, aided and abetted the violations of plaintiff's civil and Constitutional rights under color of State law, and caused

plaintiff to suffer great and irreparable personal and financial harm. By these acts they violated title 42 U.S.C. Sections 1983-1986.

Second Amended Complaint, para 274. Debtor also asserts a conspiracy to interfere with civil rights, count sixteen, as follows:

> 276. David A. Betron, Tuthill Finance, Pliny Syndications, MPJM Crush Holdings, Alan Drezin and Richard Pryor violated title 42 U.S.C. Section 1985, by engaging in a conspiracy to violate plaintiff's Civil rights, and to aid and abet the violations, in the case of MPJM Crush Holdings v. Kenneth Moxey. The sequence of events in the Kings County Supreme Court and Federal bankruptcy Court of the Eastern District of New York clearly met the prima facie evidence of a conspiracy, the existence of which is a matter of fact to be determined by a jury, as in every matter of fact stated in this complaint.

Second Amended Complaint, para 276.

Debtor has simply failed to properly plead a viable civil rights claim or a conspiracy to interfere with civil rights claim.

### 3. Debtor has failed to properly state any other viable claim

Debtor also asserts against Betron as count seventeen, the failure to prevent a civil rights violation, as count nineteen, the violation of constitutional due process rights and protections, as count twenty, fraud, as count twenty-one, conspiracy, as count twenty-three, the violation of constitutional due process, and as count twenty-six, and criminal acts under various enumerated federal statutes.[14] Second Amended Complaint, paras 280-283, 293-295, 296-297, 298-300, 303-304, 310-311, respectively.

---

[14] Debtor lists:
Title 28 U.S.C. Section 242. Subjecting plaintiff to the deprivation of rights, privileges, and immunities secured under the Constitution and laws of the United States.
Title 18 U.S.C. Section 1510 (preventing reporting of criminal acts);
Title 18 U.S.C. Section 1951(relating to interference with commerce);
Title 18 U.S.C. Section 1952 (relating to racketeering);
Title 18 U.S.C. Section 1341 (relating to mail fraud); and
Title 18 U.S.C. Section 1343 (relating to wire fraud).

This Court has carefully considered each of these claims. Debtor has failed to satisfy the plausibility requirements under *Iqbal/Twombly,* has failed to meet his heightened pleading burden under Rule 9, and has simply failed to allege a viable claim against Betron for serving Debtor with process. All of Debtor's allegations, in the aggregate, are nothing more than conclusory allegations of conduct that do not have a legal or logical nexus to the requested relief. The record before this Court is clear that Debtor suffered no violation of procedural or substantive due process before the State Court or before this Court. Simply stated, Debtor failed to take action to protect his claimed rights, and lost. When Debtor challenged service of the Foreclosure Action, he received a hearing, and lost. Furthermore, Debtor did not appeal or move for reconsideration of either decision. A bankruptcy court cannot review and reverse decisions made in the State Court solely on the basis of Debtor having lost in previous state court litigation. Stated simply, losing in litigation is not a violation of any state or federal common law right or statute. Debtor has done precisely what *Iqbal* and *Twombly* were meant to avoid; a litigant making, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which, as the Supreme Court stated "do not suffice". *Iqbal*, 556 U.S. at 678.

As to his conspiracy allegations, Debtor has failed to plead the alleged fraud with "particularity," including specific facts regarding the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation. Again, Debtor's allegations revolve around the mere fact that he was unsuccessful in state court and thereby believes he is entitled to damages.

Finally, Debtor has failed to establish that he even has legal standing to challenge the Trustee's sale of the Property in this Court, since the bankruptcy estate, not Debtor, owned the

Property upon his filing of this bankruptcy case, and by Debtor's own sworn schedules, the Property was worth less than the outstanding mortgages he listed.

*Conclusion*

Based on the above, it is therefore

**ORDERED**, that the Betron Motion to Dismiss is granted; and it is further

**ORDERED**, that all of Debtor's claims against David A. Betron contained in all of the Complaints are dismissed; and it is further

**ORDERED**, that the Clerk of Court shall serve a copy of this Order on Debtor, Betron, and counsel for each Defendant.



**Dated: May 7, 2014**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**